Peter Rukin (SBN 178336)
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700
E-mail: peterrukin@rhdtlaw.com

Rosa Vigil-Gallenberg (SBN 251872)
GALLENBERG PC
9701 Wilshire Blvd. Suite 1000
Beverly Hills, CA 90071
Telephone:   (310) 295-1654
Facsimile:   (310) 733-5654
Email: rosa@gallenberglaw.com

Ian McLoughlin (*pro hac vice* application to be filed)
Tom Urmy (*pro hac vice* application to be filed)
SHAPIRO HABER & URMY LLP
53 State Street 13th Floor
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
E-mail: theyman@shulaw.com

Attorneys for Representative Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JUSTIN LARKIN, ANTHONY TIJERINO, and AHMAD DEANES, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>YELP! INC.,<br><br>                    Defendant. | Case No.  3:11-cv-01503-EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Date:  June 1, 2012<br>Time:  1:30 p.m.<br>Courtroom:  5 -17th Floor<br>Judge:  Hon. Edward M. Chen |

1    **TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2          PLEASE TAKE NOTICE that on June 1, 2012, at 1:30 p.m., or as soon thereafter as the

3    matter may be heard in the courtroom of the Honorable Edward Chen, in Courtroom 5 of the

4    United States District Court for the Northern District of California, located at 450 Golden Gate,

5    San Francisco, California, Plaintiffs will and hereby do make this unopposed motion for an order

6    from this Court granting preliminary approval of the proposed class and collective action

7    settlement in the above-entitled litigation pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. §§ 201 et

8    seq.  Through this motion, Plaintiffs seek an order from the Court: (1) granting preliminary

9    approval of the proposed settlement; (2) conditionally certifying for settlement purposes a National

10   Settlement Class; (3) conditionally certifying a California Class for settlement purpose; (4)

11   approving the form, content and method of distribution of the Notice; (5) appointing Simpluris,

12   Inc. as the Claims Administrator; (6) appointing Rukin Hyland Doria & Tindall LLP, Gallenberg

13   PC, and Shapiro Haber & Urmy LLP as settlement Class Counsel, and (7) scheduling a hearing

14   regarding final approval of the proposed settlement and Class Counsel's request for attorney's fees,

15   costs, and enhancement award payments.

16         This motion is based on the concurrently filed memorandum of points and authorities, the

17   declarations of Peter Rukin, Rosa Vigil-Gallenberg, Tom Urmy and all other pleadings and papers

18   on file in this action, and such argument as the court may hear.

19

20   Dated:  April 27, 2012                    Respectfully submitted,

21                                             RUKIN HYLAND DORIA & TINDALL LLP

22

23                                   By:      _____/s/ Peter Rukin _____

24                                             Peter Rukin

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................2

   A.  Factual Background and the Parties' Contentions .......................................2

   B.  Procedural History ......................................................................................3

III.  TERMS OF THE PROPOSED SETTLEMENT..............................................4

   A.  The Settlement Class ...................................................................................4

   B.  Relief of the Settlement Class .....................................................................5

   C.  Settlement Notice, Claim and Exclusion Procedures ...............................6

   D.  Release of Clams ........................................................................................7

   E.  PAGA Payment, Class Representatives' Incentive Payments, Attorneys Fees and Costs, and Settlement Administration ........................................................7

   F.  Payment ......................................................................................................7

IV.   ARGUMENT ....................................................................................................7

   A.  Preliminary Approval of the Settlement is Appropriate .........................8

      1.  The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiation .....9

      2.  The Settlement Contains No Obvious Deficiencies and

          Falls Within the Range of Possible Approval ...................................9

         a.  The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation Support Preliminary Approval ........10

         b.  The Settlement Consideration and Plan of Allocation Are Fair and Reasonable ........11

      3.  The Attorneys' Fees and Costs that Plaintiffs Intend to Request Are Reasonable ..12

      4.  The Proposed Service Awards to Class Representatives Are Reasonable ...............13

      5.  The Court Should Appoint Simpluris, Inc., to Administer the Settlement Claims ..14

   B.  Class and Collective Action Certification Is Proper ...............................15

      1.  Standards Governing Approval of Settlement Classes ..................15

      2.  The Settlement Class Satisfies the Requirements of 23(a)...........16

      3.  The Settlement Class Meets the Requirement of Rule 23(b)(3) ...............18

   C.  The Proposed Notice is Adequate, Such that the Court Should Order

       Distribution of the Notice to Class Members ..........................................19

   D.  The Court Should Set a Final Approval Hearing ..................................19

V.    CONCLUSION ................................................................................................20

i

1

## TABLE OF AUTHORITIES

2
**Cases**

3
*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).................................................... 15

4
*Armstrong v. Bd. Of School Dirs.*, 616 F.2d 305 (7th Cir. 1980)........................................ 8

5
*Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819 (D. Mass. 1987)....................................... 9

6
*Bradburn Parent Teacher Store, Inc. v.  3M*, 513 F. Supp. 2d 322 (E.D. Pa. 2007) ...................... 14

7
*Burns v. Elrod*, 757 F.2d 151 (7th Cir. 1985).................................................................. 19

8
*Bynum v. Dist. Of Columbia*, 412 F. Supp. 2d 73 (D. D.C. 2006) .................................... 14

9
*Byrd v. Civil Service Comm'n*, 459 U.S. 1217 (1983) ........................................................ 8

10
*Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796 (2009)........................................ 10

11
*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................................... 19

12
*Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010)........... 9

13
*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1988)........................................ 8

14
*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................................... 10

15
*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) .................................... 13

16
*Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142 (M.D. Fla. 2005) .............................. 8

17
*Dunleavy v. Nadler (In re: Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454 (9th Cir. 2000) ............ 8, 12

18
19
*EEOC v. Kovacevich "5" Farms*,
    No. CV-F-06-165 OWW/TAG, 2007 WL 1174444 (E.D. Cal. Apr.19, 2007)........................... 16

20
*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................................... 19

21
*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ........................................................... 8

22
23
*Garner v. State Farm Mut. Auto. Ins.*,
    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................... 14

24
*Greko v. Diesel U.S.A., Inc.*,
    No. C 10-02576, 2011 WL 5529849 (N.D. Cal. October 26, 2011) .......................... 19

25
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)....................................... passim

26
*In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................... 9

27
*In re Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................. 9

28

*In re Vitamins Antitrust Litig.*,
   No. MISC 99-197 (TFH), MDL 1285, 2001 WL 856292 (D. D.C. July 25, 2001). .................... 10

*Kaufman and Broad-South Bay v. Unisys Corp.*, 822 F. Supp. 1468 (N.D. Cal. 1993) ................. 11

*La Parne v. Monex Deposit Co.*,
   No. SACV 08-0302 DOC (MLGx), 2010 WL 4916606 (C.D. Cal. Nov. 29, 2010) .................... 8

*Lerwell v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978); ..................................... 19

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ............................................. 16

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ......................................... 16

*Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .................................... 13

*Misra v. Decision One Mortg. Co.*,
   No. SA CV 07-0994 DOC (RCx), 2009 WL 4581276, at *4 (C.D. Cal. Apr. 13, 2009)....... 15, 20

*Murillo v. Pacific Gas & Elec. Co.*
   No. CIV 2:08-1974 WBS (GGH), 2010 WL 2889728, at *3 (E.D. Cal. July 21, 2010)............. 15

*Officers for Justice v. Civil Service Com.*, 688 F.2d 615 (9th Cir. 1982) ..................................... 8, 10

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439 (N.D. Cal. 2008) ......................................... 18

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ..................................................................... 13

*Rannis v. Recchia*, No. 09-55859, 2010 WL 2124096 (9th Cir. May 27, 2010)............................. 16

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ....................................................... 13

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005) ....................................................... 16

*Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338 (D. Miss. 2003) ............................................. 13

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003)......................................................................... 13

*Van Vrancken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ...................................... 14

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal.2009)................................ 9

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)............................................................. 16

*Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576 (2009) ..................................................... 10

iii

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632 (2004) ...................................... 15

Theordore Eisenberg & Georffrey P. Miller, "Incentive Awards to Class Action Plaintiffs: An
    Empirical Study" (2005). *New York University Law and Economics Working Papers*. Paper 40.
    http://lsr.nellco.org/nyu_lewp/40 ............................................................................................... 14

**Rules**

29 U.S.C §216(b)........................................................................................................... 11, 15

California Labor Code's Private Attorneys General Act, Labor Code § 2698 *et. seq*. ...................... 3

Fed. R. Civ. P. 23 ............................................................................................................ 7, 15, 19

## I.   INTRODUCTION

Plaintiffs Justin Larkin, Anthony Tijerino, and Ahmad Deanes (hereinafter "Plaintiffs") seek preliminary approval of this proposed class and collective action settlement Plaintiffs entered on behalf of themselves and the proposed Class of Account Executives employed by Yelp! Inc. ("Defendant or "Yelp"), which will provide for a maximum settlement payment of $1,250,000 in return for a release and dismissal with prejudice of the claims asserted against Yelp in this action. The net settlement fund will be distributed to Participating Class Members based on the number of work weeks Class Members worked during the relevant class period.

Plaintiffs and Class Members worked as Account Executives for Yelp.  During the relevant class period, Yelp classified Account Executives as exempt from the overtime requirements of federal and state law and paid them at a straight-time rate of pay rather than an overtime rate of pay for the overtime hours that they worked.  Plaintiffs challenged this pay practice on the grounds that Yelp's classification of its Account Executives as exempt was unlawful because these employees did not fall into the commission/inside sales exemption, the administrative exemption, or any other known exemption.

The proposed Settlement is fair and reasonable in light of the risks Plaintiffs and Class Members faced in connection with the class certification, liability, and damages phases of this case and the value of the claims should Plaintiffs prevail.  Plaintiffs contend that Yelp cannot seriously dispute the alleged misclassification of Account Executives, which lies at the heart of this case, as there is no colorable exemption defense.  However, Plaintiffs face several potential procedural hurdles.  Specifically, Yelp contends that overtime claim releases signed by some putative class members in March 2011, a class action prohibition policy promulgated by Yelp in February 2011 signed by a majority of Class Members, and severance agreement releases signed by former employees (including the two California-based named Plaintiffs) will bar the participation of the vast majority of potential class members.  A determination that the releases and/or the class action waiver are valid would significantly narrow the scope of the case and/or present a potential barrier to recovery for many Class Members.

1    To avoid that risk, Plaintiffs' counsel have negotiated a Settlement that creates a maximum

2    settlement amount of $1,250,000.  Plaintiffs' counsel believe that this Settlement—negotiated

3    extensively and at arm's length with the assistance of an experienced mediator—is a fair and

4    reasonable resolution of the claims against Yelp in light of the risks Plaintiffs face if this matter

5    proceeds to trial.  Accordingly, Plaintiffs respectfully request that this Court: (1) grant preliminary

6    approval of the proposed settlement; (2) conditionally certify for settlement purposes a National

7    Settlement Class; (3) conditionally certify a California Class for settlement purposes; (4) approve

8    the form, content, and method of distribution of the Notices and Proof of Claim forms; (5) appoint

9    Simpluris, Inc. ("Simpluris"), as the Claims Administrator pursuant to the Settlement Agreement;

10   (6) appoint Rukin Hyland Doria & Tindall LLP, Gallenberg PC, and Shapiro Haber & Urmy LLP

11   as settlement Class Counsel; and (7) schedule a hearing regarding final approval of the proposed

12   settlement and Class Counsel's request for attorney's fees, costs, and incentive award payments.

13   **II.       FACTUAL AND PROCEDURAL BACKGROUND**

14   **A.       Factual Background and the Parties' Contentions**

15   Yelp is a San Francisco-based company which operates a social networking and user

16   review website.  Yelp generates revenue through the sale of advertising and uses inside sales

17   personnel, called "Account Executives," to secure its advertising business.  Account Executives

18   work under different titles, depending on their experience and seniority: account executive trainee,

19   junior account executive, account executive, or senior account executive.  Regardless of title, all

20   Account Executives have the same core responsibility to sell Yelp's advertising products.

21   From the beginning of its operations until approximately March 2011, Yelp classified its

22   Account Executives as exempt from federal and state overtime laws.  Yelp paid all Account

23   Executives under a similar compensation plan during the liability period.  Although some details

24   varied, all Account Executives received a base salary and had the ability to earn additional

25   compensation or to move to a higher level of compensation based on performance.

26   Each of the Plaintiffs worked for Yelp as an Account Executive.  Docket Number ("Dkt.

27   No.") 4, at ¶ 9-11.  Plaintiff Larkin worked in Yelp's San Francisco office from September 2008 to

28

2

March 2009 and Plaintiff Tijerino worked in the San Francisco office from February 2010 through November 2010. *Id*. at ¶ 9-10. Plaintiff Deanes worked out of Yelp's Scottsdale, Arizona office from October 2010 to January 2011. *Id*. at ¶ 11.

Plaintiffs contend that Yelp misclassified its Account Executives as exempt from overtime, and that, on the basis of this exempt classification, Yelp did not pay Account Executives the overtime wages required under the FLSA or California law.

Yelp contends that Plaintiffs' claims have no merit. Yelp asserts that the majority of class members, including two of the named Plaintiffs, have signed releases that prevent them from bringing the claims asserted in this lawsuit. Yelp also claims that many class members have agreed to pursue any claims that they may have individually rather than on a class or collective action basis, effectively precluding them from participating in this action.

**B.    Procedural History**

On March 29, 2011, Plaintiff Justin Larkin filed this action in the United States District Court for the Northern District of California, asserting claims under the FLSA for unpaid overtime and under the California Labor Code for unpaid overtime, waiting time penalties, wage statement damages, and restitution. Dkt. No. 1.

On April 18, 2011, Plaintiff Justin Larkin provided notice to the California Labor and Workforce Development Agency and Yelp in accordance with the procedures set forth in the California Labor Code's Private Attorneys General Act, Labor Code § 2698 *et. seq*. (PAGA) of the PAGA claim in this case. The PAGA notice included a file-endorsed copy of the complaint.

On April 19, 2011, Plaintiffs filed an amended complaint adding two additional plaintiffs, Anthony Tijerino and Ahmad Deanes. Dkt. No. 4.

On May 11, 2011, the parties executed an agreement tolling the FLSA statute of limitation for all potential collective action members effective May 11, 2011. Declaration of Peter Rukin In Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement ("Rukin Decl.") ¶ 7. On May 20, 2012, the parties executed a stipulation requesting a stay of the proceedings pending mediation and permitting the filing of a second amended complaint adding a

1    PAGA claim in the event that mediation failed and the Court thereafter lifted the stay.  Dkt. No. 10.

2    On May 24, 2011, the Court granted the requested stay.  Dkt. No. 11.

3          Plaintiffs engaged in an extensive investigation into their claims and Yelp's potential

4    defenses, including interviewing numerous class members and reviewing and analyzing documents

5    reflecting Yelp's compensation policies, employment agreements, and workweek data.  Rukin

6    Decl., ¶ 6.  Additionally, Plaintiffs reviewed an analysis produced by Yelp reflecting time worked

7    by a representative sample of Account Executives, using data gathered from phone systems used

8    by Account Executives.  *Id.*

9          On September 15, 2011, the parties participated in a full-day mediation with Mark Rudy of

10   Rudy, Exelrod, Zieff & Lowe.  Although the parties did not reach a settlement on that date, they

11   continued to engage in extensive and thorough settlement discussions for over six-months.  As a

12   result of these discussions, the parties agreed to the terms and conditions set forth in the Settlement

13   Agreement for which Plaintiffs now seek preliminary approval.  Rukin Decl., ¶ 8.

14   **III.     TERMS OF THE PROPOSED SETTLEMENT**

15         The complete details of the Settlement are contained in the Settlement Agreement signed by

16   the parties and attached as Exhibit 1 to the Declaration of Peter Rukin.  The following summarizes

17   the Settlement Agreement's terms.

18   **A.  The Settlement Class**

19         The Settlement Class is composed of the "California Class" and the "National Class." The

20   California Class consists of all Persons employed by Yelp as an Account Executive in California

21   from March 29, 2007 through December 31, 2011.  Exh. 1, ¶ 1.2 & 1.4.  The National Class

22   consists of all Persons employed by Yelp as an Account Executive in the United States outside of

23   California between May 11, 2008 and December 31, 2011.  *Id.* at ¶ 1.25 & 1.27.  Both Classes

24   include the following job titles: Account Executive, Account Executive Trainee, Associate

25   Account Executive Trainee, Associate Account Executive, Junior Account Executive, Sales

26   Associate, Sales Representative, and Senior Account Executive.  *Id.* at ¶ 1.1

27         In order to receive a settlement payment under the Settlement, Class Members must submit

28

4

a claim form and thereby become either a "National Participating Claimant" or "California Participating Claimant." Members of the National Class who do not submit a claim form do not release any claims that they may have for violations of any federal or state wage and hour laws. Members of the California Class who do not submit a claim form and who do not opt out of the Settlement will release their claims under the terms of the Settlement. *Id.* at ¶ 1.8

### B. Relief to the Settlement Class

The Settlement provides that Yelp will pay up to $1,250,000 as the Maximum Settlement Amount. *Id.* at ¶ 1.22. Payment for court-approved attorneys' fees and costs, court-approved enhancement payments to the Class Representatives, fees and expenses of the Claims Administrator, and payment of a PAGA penalty to the State of California will be deducted from the Maximum Settlement Amount. *Id.* The Settlement Agreement provides that the initial maximum settlement portion for payments to California Participating Claimants is $586,667 and to National Participating Claimants is $293,333. The maximum settlement portions may be increased in the event that any amount of payments allocated towards Class Counsel's attorney fees and costs and the Representative Plaintiff enhancement awards are not sought or awarded. *Id.* at ¶ 1.23 & 1.24. The total amount that Yelp will pay under the Settlement Agreement will depend on the number of Class Members who become Participating Class Members by submitting claim forms and thereby participate in the settlement. In no event will Yelp pay less than half the maximum gross amount attributed to the California Class. *Id.* at ¶ 1.23.

Participating Class Members will be paid based on the total number of weeks worked in covered positions during the relevant class period by all eligible Class Members. Each Participating Class Member will receive his or her *pro rata* share of the Settlement pursuant to the following formula: The total number of weeks worked by each participating Class Member will be divided by the total number of weeks worked by all Class Members and the resulting percentage will be multiplied by the maximum settlement portion for the California Claimants and/or the National Claimants. With respect to the California Class only, the Settlement provides for a participation floor of 50%. *Id.* at ¶ 2.1.3. Thus, if fewer than 50% of the Qualifying California

5

Work Weeks are claimed, an amount equal to the value of 50% of the Qualifying California Work Weeks will be distributed *pro rata* to the California Participating Claimants based on their Qualifying California Work Weeks.

Yelp will also pay a significant portion of the employer's share of payroll taxes for each Participating Class Member's settlement share.  *Id*. at 2.1.1.  Yelp will pay all of the employer's share of payroll taxes for the wage portion of each Settlement share provided that no more than seventy-five percent of the qualifying work weeks from the California or National Class are claimed.  *Id*.  If more than seventy-five percent of the work weeks are claimed, the settlement shares of all Participating Class Members will be adjusted downward to offset twenty-five percent of Yelp's share of payroll taxes.  *Id*.

### C.  Settlement Notice, Claim and Exclusion Procedures

The parties have agreed, subject to Court approval, to a notice plan which includes individual mailed notices that will provide the Settlement Class members with sufficient information to make an informed decision about how and whether to participate in the proposed settlement, object to the proposed settlement, or to exclude themselves from the Settlement Class. Exh. 1, ¶ 2.4 & Ex. 2 & Ex. 3.  The parties have agreed to a California Notice and a National Notice, both of which will include a pre-printed change of address form, a Claim (and Opt In for the National Class) form, and a postage pre-paid return envelope.  *Id*.

Yelp shall provide the proposed Claims Administrator, Simpluris, each Class Member's name, last-known address, social security number and number of qualifying work weeks during the Class Period.  Simpluris shall obtain updated address information for Class Members using a National Change of Address search, a skip trace search, and other means that Simpluris customarily uses to locate class members, and then within 21 days after preliminary approval, shall mail to each Class Member the appropriate Notice and Claim form.  If a Notice is returned with a forwarding address, Simpluris will immediately re-mail the Notice using that address information. If a Notice is returned as undeliverable, Simpluris will perform a search for a more current address and re-mail the documents.  Exh. 1, ¶¶ 2.4.3, 2.4.6, 2.4.9.

6

Class Members will have 50 days from the mailing of the Class Notice to object to or request exclusion from the Settlement.  Exh. 1, ¶ 1.40.

**D.  Release of Claims**

In exchange for the payment of the Settlement Amount, the Representative Plaintiffs, all National Class Members who submit claims, and all California Class Members who do not opt-out of the Settlement will release all claims against Yelp that were alleged in this case or that reasonably arise out of the facts alleged in this case.  Exh. 1., ¶ 1.6 & 1.30.

**E.  PAGA Payment, Class Representatives' Incentive Payments, Attorneys Fees and Costs, and Settlement Administration**

The Settlement provides for each of the following:  (1) payment of $7,500 to the State of California Labor Workforce Development Agency in connection with Plaintiffs' PAGA claim; (2) service payments to the named Class Representatives (not to exceed $5,000 each); (3) the fees of the Settlement Administrator (estimated to be no more than $25,000); (3) Yelp's contribution toward the employer share of payroll taxes (either 100% or 75%, depending on the number of qualifying workweeks claimed); and (4) Class Counsel's attorneys' fees and costs, not to exceed $312,500 for attorneys' fees and $10,000 for costs.  Exh. 1, ¶ 1.22 & 2.8.1.

**F.  Payment**

Within 30 days after the Court has entered Judgment and the time for appeal has expired, Yelp, through Simpluris, will transmit each participating Class Member their share of the settlement.  Exh. 1, ¶ 2.6.1.  Checks to Class Members will remain negotiable for 90 days.  Exh. 1, ¶ 2.6.2.  If a check has not been cashed within 60 days of issuance, Simpluris shall send the Class Member a postcard reminder about the upcoming deadline.  *Id*.  If any funds remain from uncashed checks upon the expiration of the 90 day negotiation period, the funds shall be donated to the Volunteer Legal Services Program of the Bar Association of San Francisco within 30 days.  Exh. 1, ¶ 2.6.2.

**IV.    ARGUMENT**

**A.    Preliminary Approval of the Settlement is Appropriate.**

The approval of a class action settlement is a two-step process under Fed. R. Civ. P. 23(e).

7

1   *Armstrong v. Bd. Of School Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*

2   *by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998).  First, the Court must decide whether to

3   grant preliminary approval of the settlement and order that notice of the terms of the settlement be

4   sent to class members, including by determining whether the proposed settlement is "within the

5   range of possible approval."  *Id.*  The purpose of the preliminary approval process is to determine

6   whether the proposed settlement, when taken as a whole, is fundamentally fair, adequate, and

7   reasonable to the Class.  *See Dunleavy v. Nadler (In re: Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454,

8   458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Dail*

9   *v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145 (M.D. Fla. 2005) (applying general class

10  action settlement standards in FLSA case); *La Parne v. Monex Deposit Co.*, No. SACV 08-0302

11  DOC (MLGx), 2010 WL 4916606, at *1 (C.D. Cal. Nov. 29, 2010) (applying Rule 23(e) settlement

12  standards in FLSA case).

13          The decision whether a proposed settlement is fair, adequate and reasonable to the class is

14  committed to the Court's sound discretion.  *See Hanlon*, 150 F.3d at 1026; *Officers for Justice v.*

15  *Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied, Byrd v. Civil Service Comm'n*,

16  459 U.S. 1217 (1983); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1988).  In

17  exercising that discretion at the preliminary approval stage, the court should consider a variety of

18  factors, including (1) whether the settlement was the product of collusion between the parties; (2)

19  the strength of Plaintiffs' case; (3) the risk, expense, complexity, and duration of further litigation;

20  (4) the risk of maintaining class certification; (5) the amount of settlement; (6) investigation and

21  discovery; and (7) the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026.  The Court also

22  applies its discretion in light of the judicial policy favoring settlement of complex class action

23  litigation.  *Officers for Justice*, 688 F.2d at 625 ("Voluntary Conciliation and settlement are the

24  preferred means of dispute resolution.  This is especially true in complex class action litigation.").

25          As discussed below, application of the relevant factors here supports preliminary approval

26  of this Settlement.

27  **1.      The Settlement Is the Product of Serious, Informed, Non-Collusive**
            **Negotiation**

28

8

1    As settlement inherently involves a potentially hard-fought compromise, a court should

2    generally presume fairness at the preliminary stage of approval of a class action settlement so long

3    as the settlement is recommended by experienced class counsel after arms-length bargaining.

4    *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a

5    proposed class settlement has been reached after meaningful discovery, after arm's-length

6    negotiation, conducted by capable counsel, it is presumptively fair"); *Cicero v. DirecTV, Inc.,* No.

7    EDCV 07-1182, 2010 WL 2991486, at * 3 (C.D. Cal. July 27, 2010) (same).

8    In this case, the Settlement Agreement is the result of intensive, arm's-length negotiations

9    involving experienced employment counsel well-versed in both the substantive law and class

10   action litigation procedures and familiar with the legal and factual issues of this case in particular.

11   Rukin Decl., ¶¶ 3-5; Declaration of Rosa Vigil-Gallenberg in Support of Plaintiffs' Motion for

12   Preliminary Approval ("Vigil-Gallenberg Decl.") ¶ 3-5; Declaration of Tom Urmy in Support of

13   Plaintiffs' Motion for Preliminary Approval ("Urmy  Decl.") ¶ 3-6.

14   . The parties began settlement negotiations after exchanging relevant discovery, and over

15   the course of a full-day mediation session with an experienced mediator.  The parties then

16   conducted numerous follow-up negotiations over the following six-months.  Rukin Decl., ¶ 8.

17   "Such negotiations are highly indicative of fairness" of the proposed Settlement.  *In re Immune*

18   *Response Securities Litigation*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

19   **2.    The Settlement Contains No Obvious Deficiencies and Falls Within the**
      **Range of Possible Approval**

20   In deciding whether the proposed settlement is adequate and falls within the range of

21   possible approval, courts look to the strength of plaintiffs' claims, the risks plaintiffs' faced in

22   pressing forward with their claims, and "plaintiffs' expected recovery balanced against the value of

23   the settlement offer."  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D.

24   Cal.2009), quoting *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

25   2007).  The settlement's adequacy must be judged as "'a yielding of absolutes and an abandoning

26   of highest hopes . . . .'  Naturally, the agreement reached normally embodies a compromise; in

27   exchange for the saving and cost and elimination of risk, the parties each gave up something they

28

9

1   might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (quoting

2   *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

3        Here, an analysis of the Settlement shows that there are no grounds to doubt its fairness,

4   that it has "no obvious deficiencies" and it is "within the range of possible approval."  *In re*

5   *Vitamins Antitrust Litig.*, No. MISC 99-197 (TFH), MDL 1285, 2001 WL 856292, at *4 (D. D.C.

6   July 25, 2001).

7              a.        **The Strength of Plaintiffs' Case and the Risk, Expense,**
                         **Complexity, and Likely Duration of Further Litigation Support**

8                        **Preliminary Approval**

9        Plaintiffs contend that Yelp misclassified its Account Executives as exempt and  failed to

10  pay them overtime wages in violation of California law and the FLSA, and that it has not identified

11  any potential defenses to the substance of Plaintiffs' claims.  Plaintiffs, however, recognize that

12  potential procedural hurdles exist in this case, which could present a barrier to recovery for many

13  putative class members.

14       Yelp claims that the majority of Class Members signed overtime claim releases, and that

15  former employees (including two of the named Plaintiffs) have signed severance agreements

16  containing releases which bar their participation in the lawsuit.  Yelp also argues a class action

17  prohibition implemented in February 2012 bars Class Members from pursuing their claims in this

18  litigation on a class or collective action basis.

19       Plaintiffs contend that, with respect to the former employees who signed severance

20  agreements containing general releases, there was no bona fide dispute over unpaid overtime wages

21  at the time the employees executed the agreements and therefore any purported release of such

22  claims is invalid.  *See Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1587 (2009) (court

23  must consider "whether a bona fide dispute existed when [plaintiff] signed the release" to

24  determine if the release is effective); *Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 803

25  (2009) (employee can "release his claim to past overtime wages as part of a settlement of a bona

26  fide dispute over those wages").  Similarly, Plaintiffs allege that the releases of wage claims signed

27  by current employees are invalid because Yelp did not make adequate disclosures to the employees

28  before obtaining the releases (including, for example, telling them that they may have been

misclassified, or that the company anticipated a lawsuit to recover those wages).  Plaintiffs contend

that this concealment renders void any purported release of such claims.  *See Kaufman and Broad-*

*South Bay v. Unisys Corp.,* 822 F. Supp. 1468, 1474 (N.D. Cal. 1993) (a party to release will not be

bound by waiver of Civil Code section 1542's protection if the releasor has relied on fraudulent

statements or misrepresentations by releasee).  Further, Plaintiffs contend that the releases upon

which Yelp relies do not waive the FLSA claims asserted in this action, because under controlling

law such claims may only be waived pursuant to a court-supervised release.  Plaintiffs also contend

that Yelp's newly-instituted class action waiver, instituted after Plaintiffs left their employment

with Yelp, does not prevent them from seeking classwide resolution of their claims and those of the

putative class.

Although Plaintiffs believe that they should prevail if forced to litigate Yelp's asserted

defenses, they recognize the possibility of adverse rulings on each of these issues.  This Settlement

recognizes that the existence of executed releases and a potential class action prohibition present

legal and factual questions that will involve substantial pretrial motion practice and may bar

participation of many class members, as well as narrow the scope of the case.

Also, while Plaintiffs vigorously contend that the claims in this case are appropriate for

class certification, Yelp will contest certification in the absence of this Settlement.  This Settlement

avoids the risk that Plaintiffs would not prevail on their Rule 23 motion or defeat any

decertification motion under 29 U.S.C §216(b).

In sum, the presence of the potential procedural hurdles Plaintiffs face, make the outcome

of Plaintiffs' claims uncertain and a lengthy appeal likely.  This Settlement avoids that substantial

uncertainty, while ensuring that Class Members receive substantial consideration now for a release

of their claims.  *See* Rukin Decl., ¶ 9.

### b. The Settlement Consideration and Plan of Allocation Are Fair and Reasonable

The Settlement sum is fair and reasonable in light of the risks of further litigation.  If

Plaintiffs were able to establish that California Class Members worked an average of five overtime

hours per week[1], the total damages owed to the California Class would be approximately $2,850,000. The damages owed to non-California FLSA Class Members (using that same five hour assumption) would be $630,000. This Settlement provides Class Members with a significant recovery, particularly in light of the risks of litigation. Rukin Decl., ¶ 9. Further, this Settlement affords relief to Class Members who likely would never have filed individual claims for unpaid overtime wages, due to a belief that they validly released their claims to unpaid wages, fear, retaliation, or are otherwise concerned about the potential adverse consequences of participating in this litigation. Rukin Decl., ¶ 11. Under the circumstances of the case, the amount of the Settlement is fair, adequate, and reasonable. *See Dunleavy v. Nadler*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one sixth (16.67%) of the potential recovery adequate in light of the plaintiff's risks).

The plan of allocation of the Settlement to Class Members is also fair and reasonable. Based on the information and data reviewed investigating these claims, Counsel have no reason to believe that any one Account Executive would have worked materially more overtime hours, on average, than any other Account Executive. For this reason, the Settlement provides that the Settlement shall be allocated based on workweeks worked by Class Member (the standard allocation methodology in wage and hour cases).

Additionally, the Settlement allocates a larger per week recovery to California Class members than the National Class members (assuming all eligible class members participate in the settlement) because California law provides for greater remedies and a higher overtime rate and different calculation methodology than the FLSA.

### 3. The Attorneys' Fees and Costs that Plaintiffs Intend to Request Are Reasonable

The Settlement provides that, prior to the Final Approval Hearing, Class Counsel may petition the Court for a total award of fees not to exceed $312,500 and costs not to exceed $10,000. Rukin Decl., Exh. 1, ¶ 2.8.1. Plaintiffs submit that this provision is fair and reasonable given the

---

[1] Yelp contends that Class Members worked no overtime hours and provided Plaintiffs' Counsel with data that Yelp contends reflects that Class Members worked anywhere between 12 minutes of overtime per week and 2 hours and 20 minutes of overtime per week. *See* Rukin Decl., ¶ 10.

1    time and expenses that Plaintiffs' counsel have devoted to this case and the result they have

2    achieved for the Class.  The maximum amount of Class Counsel's fees is 25% of the total

3    Settlement, which is within the range of reasonableness under Ninth Circuit authority.  *Powers v.*

4    *Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (twenty-five percent of the recovery is "benchmark"

5    for attorneys' fees under the percentage of recovery approach.); *Six (6) Mexican Workers v. Ariz.*

6    *Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (usual common fund recovery is 20-30

7    percent).

8                    **4.      The Proposed Service Awards to Class Representatives Are Reasonable**

9            The proposed incentive awards of are consistent with a fair, just, and adequate settlement.

10   Rukin Decl., ¶¶ 12.  In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action

11   cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Courts routinely

12   approve incentive awards to compensate named plaintiffs for the services they provided and the

13   risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*,

14   197 F.R.D. 136, 145 (E.D. Pa. 2000); *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (D.

15   Miss. 2003) (same).  To assess whether an incentive payment is appropriate, courts balance "the

16   number of named plaintiffs receiving incentive payments, the proportion of the payments relative

17   to the settlement amount, and the size of each payment." *Staton v. Boeing*, 327 F.3d 938, 977 (9th

18   Cir. 2003).

19           The Settlement provides that the three representative Plaintiffs, Justin Larkin, Anthony

20   Tijerino, and Ahmad Deanes, shall each receive a service award of $5,000.  Exh. 1, ¶ 2.8.2.  These

21   payments recognize the time and effort that Plaintiffs invested in assisting Plaintiffs' counsel with

22   the investigation, prosecution, and settlement of the case, and accepting the risk of an adverse

23   result.  Rukin Decl., ¶ 12.  In addition, the payments recognize the additional obligations that these

24   representative Plaintiffs will incur as a result of the Settlement, including the requirement that they

25   each execute a general release of any and all known and unknown claims that they may have

26   against Yelp.  Ex. 1 ¶ 2.8.2; Rukin Decl., ¶ 12.

27           Further, the service awards that Plaintiffs seek for the work they have performed in this

28

13

case are consistent with the range of incentive awards approved by other federal judges in class

actions.  A 2005 study found that the average incentive award per class member across all

categories of class action cases is $15,992, and that employment discrimination class actions

(similar to wage and hour class actions because of the threat of retaliation by the employer for

active participation in the lawsuit) are "statistically significantly associated with large percentage

incentive awards."  Theordore Eisenberg & Georffrey P. Miller, "Incentive Awards to Class Action

Plaintiffs: An Empirical Study" (2005). *New York University Law and Economics Working Papers*.

Paper 40. http://lsr.nellco.org/nyu_lewp/40.  "Numerous courts in the Ninth Circuit and elsewhere

have approved incentive awards of $20,000 or more where . . . the class representative has

demonstrated a strong commitment to the class."  *Garner v. State Farm Mut. Auto. Ins*., No. CV 08

1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases).  *See

also Bradburn Parent Teacher Store, Inc. v.  3M*, 513 F. Supp. 2d 322 (E.D. Pa. 2007) (incentive

award of $75,000 to one named plaintiff); *Bynum v. Dist. Of Columbia*, 412 F. Supp. 2d 73 (D.

D.C. 2006) (incentive awards of $200,000 divided among six named plaintiffs); *Van Vrancken v.

Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (incentive award of $50,000 to one

named plaintiff).

### 5.    The Court Should Appoint Simpluris, Inc., to Administer the Settlement Claims

To ensure the fair and efficient administration of the Settlement, the Court should appoint

Simpluris, an experienced claims administrator, to distribute the Notice and administer claims

under the Settlement Agreement.  Rukin Decl., ¶ 13.  In return for its work, Plaintiffs anticipate

that Simpluris will be paid a maximum of $25,000 from the Settlement Amount to compensate it

for: verifying Class Members' mailing addresses; mailing Notice via First Class Mail to the

approximately 942 Class Members and re-mailing any returned notices to updated addresses;

compiling and calculating Class Members' settlement payments; addressing any Class Members'

objections to the pre-printed information on the Claim Form; communicating with counsel to

determine settlement payments; distributing settlement checks to Class Members; mailing reminder

notices to any Class Members who have not negotiated their settlement checks within the

14

1   designated time period, and tax reporting.  Ex. 1 ¶¶ 2.9, 2.4.

2       **B.**     **Class and Collective Action Certification Is Proper**

3       Here, the parties seek certification of a California state law wage and hour class pursuant to

4   Fed. R. Civ. P. 23 as well as an FLSA collective action class pursuant to 29 U.S.C. §216(b).  As

5   discussed below, the standards for establishing a § 216(b) collective action are less stringent that

6   those for a Rule 23 class.  However, even applying the more stringent Rule 23 standards, both the

7   California Class and the National Class meet these standards.  *See Misra v. Decision One Mortg.*

8   *Co.*, No. SA CV 07-0994 DOC (RCx), 2009 WL 4581276, at *4 (C.D. Cal. Apr. 13, 2009)

9   (applying Rule 23 standards to certification of FLSA collective action for settlement purposes);

10  *Murillo v. Pacific Gas & Elec. Co.,* No. CIV 2:08-1974 WBS (GGH), 2010 WL 2889728, at *3

11  (E.D. Cal. July 21, 2010) (same).

12      **1.**     **Standards Governing Approval of Settlement Classes**

13      In the context of granting preliminary approval of the Settlement, the Court must make a

14  threshold determination as to whether the proposed Class meets the Rule 23 requirements.  *See*

15  MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632 (2004); *Amchem Prods., Inc. v.*

16  *Windsor*, 521 U.S. 591, 620 (1997).  Namely, the Court must determine whether each proposed

17  class satisfy the requirements that: (1) the individuals in the settlement class is so numerous that

18  joinder would be impracticable; (2) there is a question of law or fact common to the class; (3) the

19  named plaintiffs' claims are typical of the claims of the absent settlement class members; and (4)

20  Plaintiffs and their counsel will adequately and fairly represent the interests of the absent

21  settlement class members.  *Hanlon*, 150 F.3d at 1019.  "In addition, . . . the parties seeking class

22  certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or

23  (3)."  *Id*. at 1022.

24      Under the FLSA, a collective action may be maintained by an employee or employees on

25  behalf of others who are similarly situated.  29 U.S.C. §216(b).  In the initial "conditional"

26  certification phase, the "similarly situated" standard is more permissive than Rule 23 and requires

27  only that the named plaintiffs make a "modest factual showing sufficient to demonstrate that [he or

28

PLAINTIFFS' MPA ISO PRELIMINARY APPROVAL          Case No. 3:11-cv-01503-EMC

1    she] and potential plaintiffs together were victims of a common policy or plan that violated the

2    law." *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005).  Although this Settlement

3    was negotiated before any motion for conditional certification, it provides that National Class

4    Members who desire to participate in the Settlement may opt-in by submitting an Opt-In and Claim

5    Form, and only those Class Members who affirmatively opt-in to the Settlement will release their

6    claims.  Under these circumstances, the Court should approve the settlement if it is "present[ed] to

7    the district court [as] a proposed settlement, the court may enter a stipulated judgment after

8    scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353

9    (11th Cir. 1982).

10          Based on the applicable standards, as further discussed below, the Court should certify the

11   California Class and National Class for settlement purposes.  Yelp does not oppose and has agreed

12   to certification for settlement purposes.

13          **2.      The Settlement Class Satisfies the Requirements of 23(a)**

14          The proposed California Class and National Class each satisfy all the requirements of Rule

15   23(a).  First, the classes are sufficiently numerous to satisfy the requirements of Rule 23(a)(1).  The

16   Ninth Circuit has held that a class of 20 persons satisfies numerosity, *Rannis v. Recchia*, No. 09-

17   55859, 2010 WL 2124096, at *5 (9th Cir. May 27, 2010), and courts have generally found the

18   numerosity requirement satisfied when a class includes at least 40 members.  *EEOC v. Kovacevich*

19   *"5" Farms*, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr.19, 2007).

20   Here, the proposed California Class of approximately 488 Account Executives and National Class

21   of approximately 454 Account Executives easily satisfy the numerosity requirement.  Exh. 1 ¶ 1.2

22   & 1.25.

23          Second, Rule 23(a)(2) is satisfied because there is a question of law or fact common to each

24   class.  "Commonality only requires a single significant question of law or fact," the resolution of

25   which is "apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co., Inc.*, 666

26   F.3d 581, 588 (9th Cir. 2012), citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

27   Here, such common questions include: whether Yelp misclassified Account Executives as exempt

28

PLAINTIFFS' MPA ISO PRELIMINARY APPROVAL                              Case No. 3:11-cv-01503-EMC

1    employees and whether Yelp failed to pay Account Executives overtime wages for time worked in

2    excess of 40 hours per week and/or 8 hours per day.

3        Third, the typicality requirement of Rule 23(a)(3) is satisfied because the claims raised by

4    Plaintiffs are typical of the claims asserted on behalf of the class.  Typicality is established if

5    "representative claims are reasonably co-extensive with those of absent class members; they need

6    not be substantially identical."  *Hanlon,* 150 F.3d at 1020.  The claims of the representative

7    Plaintiffs in this case arise out of the same factual and legal circumstances as the claims of each

8    class member in the respective settlement classes.  Like all Account Executives, Plaintiffs were

9    classified as exempt, and subject to the same timekeeping policies and practices and the same

10   failure to provide overtime wages.

11       Fourth, Plaintiffs and Plaintiffs' counsel satisfy the adequacy requirement of Rule 23(a)(4),

12   as well as the requirements of Rule 23(g).  Rule 23(a)(4) requires that the parties fairly and

13   adequately protect the interests of the class. The adequacy requirement is met where the

14   representatives: (1) will vigorously prosecute the interests of the class through qualified counsel,

15   and (2) have common, and not antagonistic interests, with unnamed members of the class.  *Hanlon*,

16   150 F.3d at 1020.  Rule 23(g)(1)(C) states that "[i]n appointing lass counsel, the court (i) must

17   consider: [1] the work counsel has done in identifying or investigating potential claims in the

18   action, [2] counsel's experience in handling class actions, other complex litigation, and claims of

19   the type asserted in the action, [3] counsel's knowledge of the applicable law, and [4] the resources

20   counsel will commit to representing the class."

21       Here, Plaintiffs' counsel Rukin Hyland Doria & Tindall LLP, Shapiro Haber & Urmy LLP,

22   and Gallenberg PC have actively identified, investigated and prosecuted the claims that are the

23   subject of this Settlement.  Rukin Decl., ¶ 3-8; Vigil-Gallenberg Decl., ¶ 6; Urmy Decl., ¶ 7.

24   Plaintiffs' counsel have extensive experience in class action litigation, including class overtime

25   claims, and are thus well-qualified to be appointed as Class Counsel.  See Rukin Decl., ¶¶ 3-5;

26   Urmy Decl., ¶¶ 3-6; Vigil-Gallenberg Decl., ¶ 3-5.  Lead counsel for these firms has been

27   appointed class counsel in other cases on numerous occasions.  *Id*.  Plaintiffs' counsel have

28

17

1    demonstrated that they have the ability and resources to vigorously pursue the claims asserted in

2    this litigation – having already invested significant resources in investigating and prosecuting this

3    case – and expect to continue to expend resources to oversee and finalize the settlement.  Rukin

4    Decl., ¶ 14.

5            Finally, the interests of the named Plaintiffs and absent Class Members are not antagonistic.

6    Plaintiffs have the same claims to unpaid overtime as the members of their respective Settlement

7    Class, have suffered the same injury, and are entitled to the same remedy.  Beyond the modest

8    enhancements requested, Plaintiffs will receive a portion of the Settlement on the same terms as all

9    other Members of the proposed Class.  Plaintiffs' counsel are aware of no conflicts between the

10   named Plaintiffs and Class Members that would render them inadequate class representatives.

11           For all these reasons, Plaintiffs' counsel and named class representatives meet the adequacy

12   requirement of Rule 23(a)(4), and the Court should appoint both law firms as Class Counsel

13   pursuant to Rule 23(g).

14           **3.      The Settlement Class Meets the Requirement of Rule 23(b)(3)**

15           The Settlement Class meets the requirements of Rule 23(b)(3), because common questions

16   "predominate over any questions affecting only individual members," and class resolution "is

17   superior to other available methods for the fair and efficient adjudication of the controversy."

18           First, the Class satisfies the predominance requirement.  "The Rule 23(b)(3) predominance

19   inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by

20   representation." *Hanlon*, 150 F.3d at 1022.  "When common questions present a significant aspect

21   of the case and they can be resolved for all members of the class in a single adjudication, there is a

22   clear justification for handling the dispute on a representative rather than on an individual basis."

23   *Id*.  Here, there is sufficient cohesion to warrant class adjudication.  As discussed above, the

24   Class's claims all flow from the same source:  On the basis of a common, class wide exempt

25   classification, Yelp has maintained and applied a single common policy, plan, and practice of not

26   paying Account Executives overtime wages. *Otsuka v. Polo Ralph Lauren Corp.,* 251 F.R.D. 439,

27   448 (N.D. Cal. 2008) (finding that common policy of misclassification were common to the class

28

18

and thus predominated over individual issues); *Greko v. Diesel U.S.A., Inc.*, No. C 10-02576, 2011 WL 5529849, at *8 (N.D. Cal. October 26, 2011) (finding Rule 23(b)(3) satisfied in misclassification case).

Second, Rule 23(b)(3) is satisfied because resolution of the issues in this case on a class wide basis is "superior to other available methods for the fair and efficient adjudication of the controversy."  The alternative to a single class action—hundreds of individual actions—would be inefficient and unfair.  *Lerwell v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully asserted individually... would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs.").  Class adjudication is particularly appropriate here given that the core evidence in the case is the uniform misclassification policy and treatment applied to all Class Members, and it is particularly inefficient to require individual adjudications of modest value claims in the face of such common evidence and legal questions.

### C. The Proposed Notice is Adequate, Such that the Court Should Order Distribution of the Notice to Class Members

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by a propos[ed settlement]."  FED. R. CIV. P. 23(e)(1).  Class Members are entitled to receive "the best notice practicable" under the circumstances.  *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).  Moreover, notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The proposed Notice and notice plan satisfy the requirements of Rule 23(e) and due process.  Ex. 1 ¶ 2.4 & Ex. 2.  The Notice clearly explains the nature of the action and the terms of Settlement.  For example, it identifies the Maximum Settlement Amount to be paid by Yelp, the settlement payment that the Class Member will receive if he or she participates in the Settlement,

how settlement payments are calculated, and how the Class Member may claim his or her portion

of the Settlement.  It further explains how to exclude oneself from the Settlement, how to object to

the Settlement, and what impact a Class Member's action or inaction will have on the release of

claims.

The proposed Notice plan ensures that the parties will make reasonable efforts to mail

individual notice to all Class members.  Yelp will provide Simpluris with each Class member's last

known address, phone number, and his or her social security number.  Simpluris will mail the

Notice and Claim Form, along with a postage pre-paid return envelope, to the last known address

of each Class Member, after first updating the address using the U.S. Postal Service's National

Change of Address (NCOA) database.  *Id*. at 2.4.1.  In addition, Simpluris will send postcards to

Class Members who have not submitted claims, submitted change of address forms, or excluded

themselves from the Settlement 15 days before the end of the Claims Period.  *Id*. at 2.4.10.  Finally,

to the extent that 15 days before the end of the Claims Period, claims have been submitted for

fewer than 50% of the Qualifying California Work Weeks, Simpluris will provide Class Counsel

with a randomly generated list of 100 Class Members who have not yet filed claims, so that

counsel may investigate any concerns regarding inadequacy of notice.  *Id*. at 2.4.10.  This is the

best notice practicable.  *See Misra*, 2009 WL 4581276 at *9 (use of NCOA database and

appropriate skip tracing followed by mailed notice is the 'best notice that is practicable under the

circumstances.'").  Because the content of the Notice and the method for distributing it to the Class

Members fulfill the requirements of Rule 23 and due process, the Court should approve the

proposed notice and the procedures for distributing it.

### D.    The Court Should Set a Final Approval Hearing

Finally, the Court should set a hearing for final approval of the Settlement on a date

appropriately scheduled to follow the date by which Class Members must file objections to the

Settlement and Plaintiffs' counsel's request for attorneys' fees.  The parties propose that if the

Court grants preliminary approval on June 1, 2012, the final papers in support of the Settlement,

including Plaintiffs' counsel's application for attorneys' fees and costs, be filed and served no later

than September 7, 2012, and that the hearing on final approval of the Settlement be set on or after October 12, 2012.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed settlement; (2) conditionally certify for settlement purposes a National Settlement Class; (3) conditionally certify for settlement purposes a California Class; (4) approve the form, content, and method of distribution of the Notice and Proof of Claim Form; (5) appoint Simpluris as the Claims Administrator pursuant to the Settlement Agreement; (6) appoint Rukin Hyland Doria & Tindall LLP, Gallenberg PC, and Shapiro Haber & Urmy LLP as settlement Class Counsel; and (7) schedule a hearing regarding final approval of the proposed Settlement and Class Counsel's request for attorney's fees and costs.


Dated:  April 27, 2012                    Respectfully submitted,

                                          RUKIN HYLAND DORIA & TINDALL LLP



                                          By:_____/s/_____
                                                          Peter Rukin

21