Peter Rukin (SBN 178336)
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700
E-mail: peterrukin@rhdtlaw.com

Rosa Vigil-Gallenberg (SBN 251872)
GALLENBERG PC
9701 Wilshire Blvd. Suite 1000
Beverly Hills, CA 90071
Telephone:   (310) 295-1654
Facsimile:   (310) 733-5654
Email: rosa@gallenberglaw.com

Ian McLoughlin
Tom Urmy
SHAPIRO HABER & URMY LLP
53 State Street 13th Floor
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
E-mail: theyman@shulaw.com

Attorneys for Representative Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JUSTIN LARKIN, ANTHONY TIJERINO, and AHMAD DEANES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YELP! INC.,<br><br>Defendant. | Case No.  3:11-cv-01503-EMC<br>**NOTICE OF MOTION AND MOTION FOR AN ORDER (1) GRANTING FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; (2) APPROVING AWARD OF CLASS REPRESENTATIVE SERVICE PAYMENTS; (3) APPROVING AWARD OF ATTORNEYS' FEES AND COSTS.**<br><br>**[DECLARATIONS OF PETER RUKIN ROSA GALLENBERG,  THOMAS URMY AND KRISTA TITTLE FILED CONCURRENTLY]**<br><br>Date:  November 30, 2012<br>Time:  2:30 p.m.<br>Courtroom:  5 -17th Floor<br>Judge:  Hon. Edward M. Chen |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL ................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT ......................... 1

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................... 2

        A.      PROCEDURAL HISTORY ................................................................................. 3

III.    TERMS OF SETTLEMENT ........................................................................................... 5

        A.      THE SETTLEMENT CLASS ............................................................................. 5

        B.      RELIEF TO THE SETTLEMENT CLASS ......................................................... 5

        C.      RELEASE OF CLAIMS ..................................................................................... 6

        D.      PAGA PAYMENT, CLASS REPRESENTATIVES' INCENTIVE
                PAYMENTS, ATTORNEYS FEES AND  COSTS, AND SETTLEMENT
                ADMINISTRATION ........................................................................................... 6

        E.      PAYMENT........................................................................................................... 7

IV.     NOTICE PROCESS AND CLAIMS RATE .................................................................... 7

IV.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................................ 9

        A.      THE CRITERIA FOR FINAL SETTLEMENT APPROVAL ARE SATISFIED . 9

                1.      THE SETTLEMENT IS FAIR GIVEN THE STRENGTH OF
                        PLAINTIFFS' CASE AND THE RISK, EXPENSE, COMPLEXITY,
                        AND LIKELY DURATION OF FURTHER LITIGATION....................... 10

                2.      THE SETTLEMENT IS FAIR GIVEN THE POTENTIAL
                        RECOVERY .......................................................................................... 111

                3.      THE PLAN OF ALLOCATION IS FAIR ADEQUATE AND
                        REASONABLE ...................................................................................... 12

                4.      THE SETTLEMENT REFLECTS THE INFORMED VIEWS OF
                        EXPERIENCED COUNSEL AND IS THE PRODUCT OF SERIOUS,
                        ARM'S-LENGTH NEGOTIATIONS CONDUCTED AFTER
                        EXTENSIVE DISCOVERY AND INVESTIGATION .............................. 13

                5.      THE LACK OF OPPOSITION BY THE CLASS SUPPORTS APPROVAL
                        OF THE SETTLEMENT ......................................................................... 13

        B.      THE REQUESTED SERVICE PAYMENTS ARE REASONABLE ............... 133

1

C. THE ATTORNEYS' FEES AND COSTS REQUESTED ARE
REASONABLE ............................................................................... 144

2

D. THE REQUESTED ADMINISTRATIVE COSTS ARE REASONABLE.......... 16

3

V. CONCLUSION ............................................................................................. 166

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Memorandum of Points &
Authorities in Support of Final Approval

# TABLE OF AUTHORITIES

**CASES**

*Blum v. Stenson*,
 465 U.S. 886, 900 n.16, 104 S.Ct. 1541 (1984) ........................................................................ 15

*Chindarah v. Pick Up Stix, Inc.*,
 171 Cal. App. 4th 796 (2009) ................................................................................................... 10

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992) ..................................................................................................... 9

*Cullen v. Whitman Med. Corp.*,
 197 F.R.D. 136, (E.D. Pa. 2000) ............................................................................................... 16

*Fleury v. Richemont N. Am., Inc.*,
 No. C-05-4525, 2008 WL 3287154 (N.D.Cal., Aug. 6, 2008) .................................................. 14

*Garner v. State Farm Mut. Auto. Ins.*,
 No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................... 14

*Harris v. Vector Marketing Corp.*,
 No. C-08-5198, 2012 WL 381202 (N.D.Cal., Feb. 6, 2012) ..................................................... 14

*In re Crazy Eddie Sec. Litig.*,
 824 F. Supp. 320 (E.D.N.Y. 1993) ............................................................................................ 16

*In re Heritage Bond Litig.*,
 No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. Jun. 10, 2005) ............................. 16

*In re Mego Financial Corp. Sec. Litig.*,
 213 F.3d 454, 459 (9th Cir. 2000) ............................................................................................. 12

*In re M.D.C. Holdings Sec. Litig.*,
 No. CV89-0090 E (M), 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ....................................... 15

*In re Omnivision Tech., Inc.*,
 No. C-04-2297 SC, 2007 WL 4293467  (N.D. Cal. Dec. 6, 2007)……………………………..15

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................ 10, 13

*Officers for Justice v. Civil Serv. Comm'n*,
 688 F.2d 615 (9th Cir. 1982) ....................................................................................................... 9

*Paul, Johnson, Alston & Hunt v. Graulty*,
 886 F.2d 268 (9th Cir. 1989) ..................................................................................................... 15

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................................................... 13

*Six Mex. Workers v. Ariz. Citrus Growers*,
 904 F.2d 1301 (9th Cir. 1990) ................................................................................................... 15

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................ 14

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................ 10

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ................................................................. 9

*Vizcaino v. Microsoft Co.*,
   290 F.3d 1043 (9th Cir. 2002) .............................................................. 15

*Watkins v. Wachovia Corp.*,
   172 Cal. App. 4th 1576 (2009) ............................................................. 10

**STATUTES**

29 U.S.C §216(b) ...................................................................................... 11

California Labor Code's Private Attorneys General Act,
   Labor Code § 2698 *et. seq.* .................................................................. 3

California Civil Code § 1542 ..................................................................... 11

**OTHER AUTHORITIES**

5 Moore's Federal Practice § 23.85[2][d] (Matthew Bender 3d ed.) ............ 13

**RULES**

Fed. R. Civ. P. 23(e)(1)(C) .......................................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' Memorandum of Points &
                                                                  Authorities in Support of Final Approval

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL**

**TO DEFENDANT AND ITS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on November 30, 2012, at 2:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5 of the United States District Court for the Northern District of California, located at 450 Golden Gate, San Francisco, California, Plaintiffs will move for final approval of the class and collective action settlement reached in this case, an award of class representative service payments in the aggregate amount of $15,000, attorney's fees in the amount of $205,000, litigation costs in the amount of $9,461.62, payment of $7,500 to the California Labor and Workforce Development Agency (LWDA), and settlement administrative expenses of $16,000.

Plaintiffs' motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities that appears below, the Declaration of Peter Rukin, the Declaration of Rosa Vigil-Gallenberg, the Declaration of Thomas Urmy, the Declaration of Krista Tittle of Claims Administrator Simpluris, Inc., the papers and pleadings on file in this action, and such other evidence as may be presented at the motion hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

**I.     INTRODUCTION**

On July 12, 2012, the Court entered an Order granting preliminary approval of the class and collective action settlement reached in this action against  Yelp!, Inc. ("Yelp").  Since that time, notice of the settlement has been distributed to the Class.  Class Members' reaction to the settlement generally has been positive.  275 out of 488 California Class Members submitted claims (representing approximately 67 percent of the total weeks worked by all California Class Members), and 145 out of 454 National Class Members have submitted claims (representing approximately 33 percent of the total weeks worked by all National Class Members).  Two

California Class Members have chosen to opt out of the settlement, and no Class Members have objected to the Settlement.

The results of Class Notice provide no ground for questioning the Court's original determination that the Settlement is fair, reasonable and adequate.  Pursuant to the Settlement, and should all late and deficient claims be honored, approximately $455,000 shall be paid to California Participating Claimants and approximately $152,000 shall be paid to National Participating Claimants.[1]  In addition, Class Counsel are requesting an award of attorneys' fees in the amount of $205,000 and litigation costs of $9,461.62.  After payment of settlement claims, attorneys' fees, litigation costs, administration expenses, enhancement awards, and LWDA payment, it appears that more than $845,000 of the $1,250,000 Maximum Settlement Amount will be paid (should all late and deficient claims be honored).[2]

Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement, award Class Counsel attorneys' fees and costs of $214,461.62, approve the Settlement Administrator's expenses of $16,000, order payment of $7,500 to LWDA, and approve incentive awards of $5,000 each to the three Class Representatives.

## II.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Yelp is a San Francisco-based company which operates a social networking and user review website.  Yelp generates revenue through the sale of advertising and uses inside sales personnel, called "Account Executives," to secure its advertising business.  Account Executives work under different titles, depending on their experience and seniority: account executive trainee, junior account executive, account executive, or senior account executive.  Regardless of title, all Account Executives have the same core responsibility to sell Yelp's advertising products.

---

[1] This distribution calculation is based on Class Counsel's request that more than $100,000 of the initial attorneys' fee amount of $312,500 be redistributed to the California and National Classes.

[2] As of October 19, 2012, the settlement administrator and parties are working to resolve 8 late claims, 3 deficient claims, and 3 claims by individuals who were not included on the original class list but who contend they are part of the Settlement Class.  As of the filing date of this Motion, Yelp has agreed that the three additional individuals are part of the Class but has not yet provided their workweek data to the Settlement Administrator.   After all late and deficient claims are resolved, and workweek data for the three additional individuals is obtained, Counsel will submit an updated report to the Court.

1    From the beginning of its operations until approximately March 2011, Yelp classified its

2    Account Executives as exempt from federal and state overtime laws.  Yelp paid all Account

3    Executives under a similar compensation plan during the liability period.  Although some details

4    varied, all Account Executives received a base salary and had the ability to earn additional

5    compensation or to move to a higher level of compensation based on performance.

6    Each of the Plaintiffs worked for Yelp as an Account Executive.  Docket Number ("Dkt.

7    No.") 4, at ¶ 9-11.  Plaintiff Larkin worked in Yelp's San Francisco office from September 2008 to

8    March 2009 and Plaintiff Tijerino worked in the San Francisco office from February 2010 through

9    November 2010.  *Id*. at ¶ 9-10.  Plaintiff Deanes worked out of Yelp's Scottsdale, Arizona office

10   from October 2010 to January 2011.  *Id*. at ¶ 11.

11   Plaintiffs contend that Yelp misclassified its Account Executives as exempt from overtime,

12   and that, on the basis of this exempt classification, Yelp did not pay Account Executives the

13   overtime wages required under the FLSA or California law.

14   Yelp contends that Plaintiffs' claims have no merit.  Yelp asserts that the majority of class

15   members, including both of the California named Plaintiffs, previously signed releases that prevent

16   them from bringing the claims asserted in this lawsuit.  Yelp also claims that many class members

17   have agreed to pursue any claims that they may have in arbitration individually rather than on a

18   class or collective action basis, effectively precluding them from participating in this action.

19   **A.    Procedural History**

20   On March 29, 2011, Plaintiff Justin Larkin filed this action in the United States District

21   Court for the Northern District of California, asserting claims under the FLSA for unpaid overtime

22   and under the California Labor Code for unpaid overtime, waiting time penalties, wage statement

23   damages, and restitution.  Dkt. No. 1.

24   On April 18, 2011, Plaintiff Justin Larkin provided notice to the California Labor and

25   Workforce Development Agency and Yelp in accordance with the procedures set forth in the

26   California Labor Code's Private Attorneys General Act, Labor Code § 2698 *et. seq*. (PAGA).  The

27   PAGA notice included a file-endorsed copy of the complaint.

28

1          On April 19, 2011, Plaintiffs filed an amended complaint adding two additional plaintiffs,

2   Anthony Tijerino and Ahmad Deanes.  Dkt. No. 4.

3          On May 11, 2011, the parties executed an agreement tolling the FLSA statute of limitation

4   for all potential collective action members effective May 11, 2011.  Declaration of Peter Rukin In

5   Support of Plaintiffs' Motion for Final Approval of Class and Collective Action Settlement

6   ("Rukin Decl.") ¶ 7.  On May 20, 2012, the parties executed a stipulation requesting a stay of the

7   proceedings pending mediation and permitting the filing of a second amended complaint adding a

8   PAGA claim in the event that mediation failed and the Court thereafter lifted the stay.  Dkt. No. 8.

9   On May 24, 2011, the Court granted the requested stay.  Dkt. No. 11.

10         Plaintiffs engaged in an investigation into their claims and Yelp's potential defenses,

11  including interviewing numerous class members and reviewing and analyzing documents reflecting

12  Yelp's compensation policies, employment agreements, and workweek data.  Rukin Decl., ¶ 6.

13  Additionally, Plaintiffs reviewed an analysis produced by Yelp reflecting time worked by a

14  representative sample of Account Executives, using data gathered from phone systems used by

15  Account Executives.  *Id.*

16         On September 15, 2011, the parties participated in a mediation with Mark Rudy of Rudy,

17  Exelrod, Zieff & Lowe.  Although the parties did not reach a settlement on that date, they

18  continued to engage in extensive and thorough settlement discussions for over six-months.  As a

19  result of these discussions, the parties agreed to the terms and conditions set forth in the Settlement

20  Agreement for which Plaintiffs now seek final approval.  Rukin Decl., ¶ 8.

21         On July 12, 2012, this Court preliminarily approved the Settlement with modifications,

22  provisionally certified the Settlement Class, directed class notice to be sent and set a final approval

23  and fairness hearing[3].  (Dkt. No. 42).  Class Notice was distributed pursuant to the Notice Plan

24  approved by the Court, and the period for submitting settlement claims and opting out of the

25

26  _____
    [3] The hearing was originally scheduled for November 15, 2012 but was later continued to
    November 30, 2012. Dkt. 45. Notice of the new hearing date was posted on the website made
27  available for purposes of this settlement. The parties have respectfully requested that the court
    clerk post notice of the new date on the front door of courtroom on November 15, 2012 alerting
28  class members of the new hearing date.

-4-

settlement has now closed.  (Dkt. No. 42, 37, 32; Declaration of Krista Tittle ("Tittle Decl.") at ¶ 9).

## III.    TERMS OF SETTLEMENT

The parties' Settlement Agreement and Release of Claims (the "Settlement") is attached as Exhibit 1 to the Declaration of Peter Rukin in Support of Final Approval.  (hereinafter referred to as "Exh. 1"). This was amended per the parties' stipulation. (Dkt. 37). The following is a summary of its terms.

### A.    The Settlement Class

The Settlement Class is composed of the "California Class" and the "National Class." The California Class consists of all Persons employed by Yelp as an Account Executive in California from March 29, 2007 through December 31, 2011.  Exh. 1, ¶ 1.2 & 1.4.  The National Class consists of all Persons employed by Yelp as an Account Executive in the United States outside of California between May 11, 2008 and December 31, 2011.  *Id.* at ¶ 1.25 & 1.27.  Both Classes include the following job titles: Account Executive, Account Executive Trainee, Associate Account Executive Trainee, Associate Account Executive, Junior Account Executive, Sales Associate, Sales Representative, and Senior Account Executive.   *Id.* at ¶ 1.1

The Settlement provides that Class Members must submit a claim form and thereby become either a "National Participating Claimant" or "California Participating Claimant."  Members of the National Class who do not submit a claim form do not release any claims that they may have for violations of any federal or state wage and hour laws.  Members of the California Class who do not submit a claim form and who do not opt out of the Settlement will release their claims under the terms of the Settlement.  *Id.* at ¶ 1.8

### B.    Relief to the Settlement Class

The Settlement provides that Yelp will pay up to $1,250,000 as the Maximum Settlement Amount.  *Id.* at ¶ 1.22.  Payment for court-approved attorneys' fees and costs, court-approved enhancement payments to the Class Representatives, fees and expenses of the Claims Administrator, and payment of a PAGA penalty to the State of California will be deducted from

the Maximum Settlement Amount.  *Id*.  The Settlement Agreement provides that the initial maximum settlement portion for payments to California Participating Claimants is $586,667 and to National Participating Claimants is $293,333, but that these settlement portions may be increased in the event that any amounts allocated towards Class Counsel's attorney fees and costs and the Representative Plaintiff enhancement awards are not sought or awarded.  *Id*. at ¶ 1.23 & 1.24.  The total amount that Yelp is required to pay under the Settlement Agreement depends on the number of Class Members who become Participating Class Members by submitting claim forms and thereby participate in the settlement.

Participating Class Members will be paid based on the total number of weeks worked in covered positions during the relevant class period by all eligible Class Members.  Each Participating Class Member will receive his or her *pro rata* share of the Settlement pursuant to the following formula:  The total number of weeks worked by each participating Class Member will be divided by the total number of weeks worked by all Class Members and the resulting percentage will be multiplied by the maximum settlement portion for the California Claimants and/or the National Claimants.

### C.    Release of Claims

The Settlement stipulated that in exchange for the payment of the Settlement Amount, the Representative Plaintiffs, all National Class Members who submitted claims, and all California Class Members who did not opt-out of the Settlement would release all claims against Yelp that were alleged in this case or that reasonably arose out of the facts alleged in this case.  Exh. 1., ¶ 1.6 & 1.30.

### D.    PAGA Payment, Class Representatives' Incentive Payments, Attorneys Fees and Costs, and Settlement Administration

The Settlement provides for each of the following:  (1) payment of $7,500 to LWDA in connection with Plaintiffs' PAGA claim; (2) service payments to the named Class Representatives not to exceed $5,000 each; (3) payment of $16,000 to the Settlement Administrator; and (3) Class Counsel's attorneys' fees and costs, not to exceed $312,500 for attorneys' fees and $10,000 for costs.  Exh. 1, ¶ 1.22 & 2.8.1.

Plaintiffs' Memorandum of Points &
Authorities in Support of Final Approval

**E.     Payment**

Within 30 days after the Court enters Judgment and the time for appeal has expired, Yelp, through Simpluris, will transmit each participating Class Member their share of the settlement. Exh. 1, ¶ 2.6.1.  Checks to Class Members will remain negotiable for 90 days.  Exh. 1, ¶ 2.6.2.  If a check has not been cashed within 60 days of issuance, Simpluris shall send the Class Member a postcard reminder about the upcoming deadline.  *Id.*  If any funds remain from uncashed checks upon the expiration of the 90 day negotiation period, the funds shall be donated to the Volunteer Legal Services Program of the Bar Association of San Francisco within 30 days and said donation would be identified as proceeds from this settlement.  Exh. 1, ¶ 2.6.2, Dkt. 37.

## IV.     NOTICE PROCESS AND CLAIMS RATE

The Court approved a notice plan which included individual mailed notices that provided Settlement Class members with information about the Settlement and their options under it.  Exh. 1, ¶ 2.4 & Exh. 2 & Exh. 3.  The parties agreed to a California Notice and a National Notice, both of which included a pre-printed change of address form, a Claim (and Opt In for the National Class) form, and a postage pre-paid return envelope.  *Id.*  The parties also agreed to that the Notices were to spell out the website address of where documents relating to this settlement could be found, including but not limited to an electronic copy (of one generic-non-Class Member specific) of both the National and California Notice with associated forms, including a generic claim form.

The Settlement also required Yelp to provide the Settlement Administrator, Simpluris, with each Class Member's name, last-known address, social security number and number of qualifying work weeks during the Class Period.  Simpluris was to obtain updated address information for Class Members using a National Change of Address search, a skip trace search, and other means that Simpluris customarily uses to locate class members, and then within 21 days after preliminary approval, was required to mail to each Class Member the appropriate Notice and Claim form.  If a Notice is returned with a forwarding address, Simpluris was required to immediately re-mail the Notice using that address information.  If a Notice was returned as undeliverable, Simpluris was to

perform a search for a more current address and re-mail the documents.  Exh. 1, ¶¶ 2.4.3, 2.4.6, 2.4.9.

Class Members were provided 50 days from the mailing of the Class Notice to object to or request exclusion from the Settlement.  Exh. 1, ¶ 1.40.

On August 2, 2012, Simpluris mailed 912 Notice Packets to the individuals contained on the Class List via First Class mail.  105 Notice Packets were returned by the post office.  Simpluris performed a skip trace for all Notice Packets returned without forwarding addresses, and remailed all returned Notice Packets.  In the end, 22 Notice Packets were undeliverable because Simpluris was unable to find a better address.  (Tittle Decl. at ¶¶ 9, 11).

On September 6, 2012, the Claims Administrator provided Class Counsel with a randomly generated list of the names (and only the names) of one hundred (100) Class Members who have, as of that point, not yet filed a Claim Certification Form.  Shortly thereafter, Class Counsel conducted a public records search of each of person listed on the random list, and contacted those whose phone numbers appeared on public records searches to alert them of the deadline to submit the claim form. Vigil-Gallenberg Decl. ¶ 14

On September 7, 2012, reminder postcards were mailed to 678 Class Members who had not submitted a Claim Form or a request for exclusion as of that date.  The postcard served as a reminder of the postmark deadline of September 21, 2012 for Claim Forms and requests for exclusion, and also provided the physical and e-mail address for the Claims Administrator as well as the link to the website where the Settlement documents and associated forms could be obtained.

To date, 420 Settlement Class Members have submitted claims.  Eleven of the claims (8 late claims and 3 deficient claims) are currently in dispute, and an additional 3 individuals not included on the original class list contend they are entitled to Settlement Payments.  On October 16, 2012, Counsel for the parties directed the Settlement Administrator to mail a letter to the 11 late and deficient claimants to obtain information necessary to resolving the disputed claims.  The 8 late claimants were sent a letter requesting an explanation of why they were late in submitting their response, and allowing them until October 26, 2012 to provide that explanation.  Title Decl. at

Plaintiffs' Memorandum of Points &
                                                                                                    Authorities in Support of Final Approval

¶ 17. The 3 Class Members who submitted deficient claim forms were sent new claim forms and directed to submit complete claim forms by October 26, 2012.  Counsel will review the responses from these 11 individuals and attempt to resolve the disputed claims.  If counsel are unable to resolve any disputes informally, they will bring them to the Court for resolution.

The 275 California Claim Forms submitted to date represent approximately 56% of the total number of California Class Members and approximately 67% of the total California workweeks.  The 145 National Claim Forms represent approximately 32% of the total number of National Class Members and workweeks.

Simpluris is also responsible for receipt of all requests for exclusion from the Settlement. As of this date, Simpluris has received two requests for exclusion from the Settlement by members of the California Class.  Of the requests for exclusion received, both were received or postmarked by September 21, 2012.  (*Id.* ¶ 15).

## IV. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A. The Criteria for Final Settlement Approval Are Satisfied

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Final approval of a proposed class action settlement will be granted where it is established that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).  In determining whether to grant final approval, the Court does not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

In the Ninth Circuit, the district court determines the fairness, reasonableness and adequacy of the settlement through a balancing test that considers:

> several factors which may include, among others, some or all of the following:  the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation;

the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.*  The relative importance of any particular factor will depend upon the nature of the claims, the types of relief sought, and the unique facts and circumstances presented by the individual case.  *Id.*  Furthermore, "[n]ot all of these factors will apply to every class action settlement.  Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval."  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-6 (C.D. Cal. 2004) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

As explained below, the relevant factors support granting final approval to this Settlement.

**1.  The Settlement is Fair Given the Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Plaintiffs contend that Yelp misclassified its Account Executives as exempt and  failed to pay them overtime wages in violation of California law and the FLSA, and that it has not identified any potential defenses to the substance of Plaintiffs' claims.  Plaintiffs, however, recognize that potential procedural hurdles exist in this case, which could present a barrier to recovery for many putative class members.

Yelp claims that the majority of Class Members signed overtime claim releases, and that former employees (including two of the named Plaintiffs) have signed severance agreements containing releases which bar their participation in the lawsuit.  Yelp also argues a class action prohibition implemented in February 2012 bars Class Members from pursuing their claims in this litigation on a class or collective action basis.

Plaintiffs contend that, with respect to the former employees who signed severance agreements containing general releases, there was no bona fide dispute over unpaid overtime wages at the time the employees executed the agreements and therefore any purported release of such claims is invalid.  *See Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1587 (2009) (court must consider "whether a bona fide dispute existed when [plaintiff] signed the release" to determine if the release is effective); *Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 803 (2009) (employee can "release his claim to past overtime wages as part of a settlement of a bona

fide dispute over those wages"). Similarly, Plaintiffs allege that the releases of wage claims signed by current employees are invalid because Yelp did not make adequate disclosures to the employees before obtaining the releases (including, for example, telling them that they may have been misclassified, or that the company anticipated a lawsuit to recover those wages). Plaintiffs contend that this concealment renders void any purported release of such claims. Further, Plaintiffs contend that the releases upon which Yelp relies do not waive the FLSA claims asserted in this action, because under controlling law such claims may only be waived pursuant to a court-supervised release. Plaintiffs also contend that Yelp's newly-instituted class action waiver, instituted after Plaintiffs left their employment with Yelp, does not prevent them from seeking classwide resolution of their claims and those of the putative class.

Although Plaintiffs believe that they should prevail if forced to litigate Yelp's asserted defenses, they recognize the possibility of adverse rulings on each of these issues. This Settlement recognizes that the existence of executed releases and a potential class action prohibition present legal and factual questions that will involve substantial pretrial motion practice and may bar participation of many class members, as well as narrow the scope of the case.

Also, while Plaintiffs vigorously contend that the claims in this case are appropriate for class certification, Yelp will contest certification in the absence of this Settlement. This Settlement avoids the risk that Plaintiffs would not prevail on their Rule 23 motion or defeat any decertification motion under 29 U.S.C §216(b).

In sum, the presence of the potential procedural hurdles Plaintiffs face, make the outcome of Plaintiffs' claims uncertain and a lengthy appeal likely. This Settlement avoids that substantial uncertainty, while ensuring that Class Members receive consideration now for a release of their claims. *See* Rukin Decl., ¶ 12.

### 2. The Settlement is Fair Given the Potential Recovery

The Settlement sum is also fair and reasonable in light of the potential recovery. Yelp's position in the litigation was that many Class Members worked no overtime hours, and Yelp provided Class Counsel with data which according to Yelp reflects that Class Members worked an

1    average of between 12 minutes of overtime per week and 2 hours and 20 minutes of overtime per

2    week.  If Plaintiffs were ultimately able to prove up the high end of this range—2 hours and 20

3    minutes of overtime per week—the total overtime wages owed to the California Class would be

4    approximately $1,392,547.[4]  The Maximum Settlement Portion for Payments to California

5    Participating Claimants ($586,667) represents forty two percent of this overtime calculation, while

6    the actual approximate $455,000 California Settlement Sum being paid to California Class

7    Members (after attrition of a portion of the initial attorneys' fee amount) constitutes approximately

8    48 percent of the overtime wages owed to the participating California Class members.  Rukin

9    Decl., ¶ 10.[5]

10        Further, this Settlement affords relief to Class Members who likely would never have filed

11   individual claims for unpaid overtime wages, due to a belief that they validly released their claims

12   to unpaid wages, fear retaliation, or are otherwise concerned about the potential adverse

13   consequences of participating in this litigation.  Rukin Decl., ¶ 11.  Under the circumstances of the

14   case, the amount of the Settlement is fair, adequate, and reasonable.  *See In re Mego Financial*

15   *Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one sixth (16.67%) of

16   the potential recovery adequate in light of the plaintiff's risks).

17            **3.  The Plan of Allocation is Fair Adequate and Reasonable**

18        The plan of allocation of the Settlement to Class Members is also fair and reasonable.

19   Based on the information and data reviewed investigating these claims, Counsel have no reason to

20   believe that any one Account Executive would have worked materially more overtime hours, on

21   average, than any other Account Executive.  For this reason, the Settlement provides that the

---

24   [4] 21,345 workweeks x $28 average OT rate of pay x 2.33 OT hours per week.  The unpaid
     overtime owed to non-California FLSA Class Members (using that same 2.33 hour assumption)
25   would be significantly lower on a per capita basis given the fluctuating workweek method of
     calculating overtime under the FLSA.  Under the FLSA, where an employee has been paid on a
26   salary basis, unpaid overtime is calculated by dividing the salary by the *total hours worked*
     (including overtime hours) to obtain a regular hourly rate of pay, and then multiplying that regular
27   rate by .5 (rather than 1.5).  The resulting amount is owed for each overtime hour worked.
     [5] .67 x $1392,547 = $933,006.  Assuming Class Members all worked 2.33 hours of overtime per
28   week, Participating California Class Members are receiving $453,000 for claims worth $933,006.

Settlement shall be allocated based on workweeks worked by Class Member (the standard allocation methodology in wage and hour cases).

Additionally, the Settlement allocates a larger per week recovery to California Class members than the National Class members (assuming all eligible class members participate in the settlement) because, as noted above, California law provides for greater remedies and a higher overtime rate and different calculation methodology than the FLSA.

### 4. The Settlement Reflects the Informed Views of Experienced Counsel and Is the Product of Serious, Arm's-Length Negotiations Conducted After Extensive Discovery and Investigation

Courts afford "Great weight" to the recommendation of counsel, "who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm.*, 221 F.R.D. at 528 (quotations and citations omitted). Here, experienced Class Counsel investigated the Class claims and Yelp's potential defenses. This investigation included the interviews of various putative class members, the review of Yelp's compensation policies and workweek data, and an analysis of the case law relevant to Plaintiffs' claims and Defendant's defenses. (Rukin Decl., ¶¶ 6, 15). This process allowed Counsel to assess the strengths and weaknesses of the claims against Defendant and led Counsel to conclude that the risk/reward calculus favored settlement on the terms obtained.

### 5. The Lack of Opposition by the Class Supports Approval of the Settlement

"'The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court.'" *Nat'l Rural Telecomm.*, 221 F.R.D. at 528 (quoting 5 Moore's Federal Practice § 23.85[2][d] (Matthew Bender 3d ed.)). Here, the reaction has been positive. Two thirds of the total California workweeks and one third of the total National workweeks have been claimed. Only two California Class Members have opted out of the Settlement, and to date no Class Member has objected to the Settlement. This reaction demonstrates the fairness, reasonableness, and adequacy of the settlement.

### B. The Requested Service Payments Are Reasonable

In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In deciding on the amount of an incentive

award, "the court must evaluate each request individually, taking into account the following factors: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in pursing it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks." *Harris v. Vector Marketing Corp.,* No. C-08-5198 , 2012 WL 381202, at *7 (N.D.Cal., Feb. 6, 2012), quoting *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003) ("the court must balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'"). *See also Garner v. State Farm Mut. Auto. Ins*., No. CV 08 1365, 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where . . . the class representative has demonstrated a strong commitment to the class" and collecting cases).

Here, the three representative Plaintiffs each seeks a very modest service award of $5,000. These payments recognize the time and effort that Plaintiffs invested in assisting Class Counsel with the investigation, prosecution, and settlement of the case, and accepting the risk of an adverse result.  Rukin Decl., ¶ 12.  In addition, the payments recognize the additional obligations that these representative Plaintiffs will incur as a result of the Settlement, including the requirement that they each execute a general release of any and all known and unknown claims that they may have against Yelp.   Rukin Decl., ¶ 12, Exh. 1 ¶ 2.8.2.  Under the circumstances, these modest $5,000 incentive awards are reasonable.  *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525, 2008 WL 3287154, at *6 (N.D.Cal., Aug. 6, 2008) (Chen, J.) (despite the fact that "his participation in the case appears limited," by "expos[ing] himself to the risk of criticism" plaintiff was entitled to a "modest" $5,000 incentive award).

### C.   The Attorneys' Fees and Costs Requested Are Reasonable

Class Counsel's fee and cost request is fair, reasonable, and appropriate under a common fund analysis.  The Ninth Circuit has approved the use of fund percentages as a reasonable manner

1   to determine attorneys' fees.  *See Vizcaino v. Microsoft Co.*, 290 F.3d 1043, 1047 (9th Cir. 2002);

2   *Six Mex. Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (citing *Blum v.*

3   *Stenson*, 465 U.S. 886, 900 n.16, 104 S.Ct. 1541, 1550 n. 16 (1984)); *In re Omnivision Tech., Inc.*,

4   No. C-04-2297 SC, 2007 WL 4293467, at *8 (N.D. Cal. Dec. 6, 2007) (observing that "use of the

5   percentage method in common fund cases appears to be dominant").  In the Ninth Circuit, 25

6   percent of the common fund is the "benchmark" for an attorneys' fees award.  *Paul, Johnson,*

7   *Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

8        Here, Class Counsel's fee request of $205,000 amounts to approximately 25 percent of the

9   monies actually being paid out by Yelp under the Settlement.[6]  The requested fee award is

10  therefore reasonable under the common fund approach.

11       The requested fee is also justified by the financial risks undertaken by Class Counsel in this

12  litigation.  Counsel accepted and litigated this class action solely on a contingency fee basis.

13  Counsel has received no compensation for attorney time to date, nor for any of the considerable

14  expenses incurred.  Moreover, there has never been any guarantee that counsel would be

15  reimbursed for the costs, or paid for their time.  (Rukin Decl., ¶ 15)

16       A lodestar cross-check further supports the reasonableness of the requested fee.  Class

17  Counsel have incurred in excess of $300,000 in lodestar litigating and resolving this case.  Rukin

18  Decl., ¶¶ 16; Vigil-Gallenberg Decl. ¶ 16; Urmy  Decl. ¶ 8.  The requested attorneys' fee award

19  will result in a payment to Class Counsel of 2/3 of their lodestar (that is, they will obtain negative

20  multiplier, or divider, on their fees), which suggest that the fee request is reasonable.  *Chun–Hoon*

21  *v. McKee Foods Corp.*, 716 F.Supp.2d 848, 854 (N.D.Cal.2010) (in performing lodestar cross-

22  check, court determined that negative multiplier "suggests that the negotiated fee award is a

23  reasonable and fair valuation of the services rendered to the class by class counsel").

24       Finally, Class Counsel are also entitled to reimbursement of their litigation costs in addition

25  to a benchmark fee award, *In re M.D.C. Holdings Sec. Litig.,* No. CV89-0090 E (M), 1990 WL

26

27  ───────────────
    [6] Under the terms of the Settlement, while Class Counsel may seek an award of attorneys' fees in
    an amount up to $312,500, any portion of this amount not sought accretes to the Settlement Sum
28  paid to Participating Class Members.  .

1   454747, at *7 (S.D. Cal. Aug. 30, 1990).  In this case, Class Counsel incurred $9,461.62 in

2   expenses in connection with the litigation and settlement of this action, and request reimbursement

3   of those costs.  Rukin Decl., ¶¶ 13, 14; Vigil-Gallenberg Decl. ¶17; Urmy  Decl. ¶ 9.

4           A copy of this motion will be made available on the website designated in the Settlement so

5   that Class Members are informed about the request for attorneys' fees and costs. Dkt. No. 37  ¶¶

6   1& 3. Class Members have until ten days following the filing of this Motion to raise any objections

7   to the fee request.  Courts have observed that the absence of any objections to the fees and costs

8   requested supports the conclusion that the requested award is fair, adequate, and reasonable.  *See In*

9   *re Heritage Bond Litig*., No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *15 (C.D. Cal. Jun.

10  10, 2005) (citing *Cullen v. Whitman Medical Corp*., 197 F.R.D. 136, 148-49 (E.D. Pa. 2000); *In re*

11  *Crazy Eddie Sec. Litig*., 824 F. Supp. 320, 326-8 (E.D.N.Y. 1993)).

12          **D.     The Requested Administrative Costs Are Reasonable**

13          Lastly, the request for reimbursement of expenses requested by the Settlement

14  Administrator is reasonable.  As set forth in the Administrator Declaration of Krista Tittle,

15  Simpluris, Inc. prepared the class notices for mailing, mailed over 912 class notices, conducted

16  necessary follow-up with regard to returned notices, mailed approximately 678 postcards

17  reminding Class Members of the deadline to submit a claim form, or opt-out, set up a website

18  containing the settlement documents and associated forms, and has processed the 426 claims

19  received as well as the requests for exclusion, change of address forms, and disputes raised.  (Tittle

20  Decl., ¶¶ 4, 7, 14-17 ).  Simpluris has requested reimbursement of expenses in the amount of

21  $16,000.

22  **V.      CONCLUSION**

23          For all the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant final

24  approval of the proposed Settlement, (2) approve the requested service awards of $5,000 each to

25  named plaintiffs (3) approve Plaintiffs' request for attorneys' fees and costs in the amount of

26  $214,461.62, (4) approve payment of settlement administrative costs in the amount of $16,000; and

27

28

Case No. 3:11-cv-01503-EMC                                    Plaintiffs' Memorandum of Points &
                                                              Authorities in Support of Final Approval

1   (5) approve payment to LWDA of $7,500 to compensate it for the State of California's share of the

2   PAGA penalties claimed in this action.

3

4

5   Dated: October 19, 2012                        Respectfully submitted,

6                                                  RUKIN HYLAND DORIA & TINDALL LLP

7                                                  By:  /s/ Peter Rukin_____
                                                   Peter Rukin
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:11-cv-01503-EMC                                    Plaintiffs' Memorandum of Points &
                                                             Authorities in Support of Final Approval